**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raul BARRAGAN–DEVIS,**
**Defendant–Appellant.**

No. 96–30304.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1997.

Decided Jan. 20, 1998.

Robert M. Leen, Seattle, Washington, for defendant-appellant.

Bruce Miyake (Argued), Assistant United States Attorney, and Ye–Ting Woo (On the Briefs), Assistant United States Attorney, Seattle, Washington, for plaintiff-appellee.

Before: WRIGHT, FERGUSON, and TROTT, Circuit Judges.

Opinion by Judge TROTT; Dissent by Judge FERGUSON.

TROTT, Circuit Judge:

## OVERVIEW

Raul Barragan–Devis (Appellant) appeals his jury conviction for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 812 (1994). He contends the district court erred by failing to inform him of a juror's question, thereby depriving him of the opportunity to suggest a response.[1] Although we agree with Appellant that the district court's handling of the note was error, we affirm his conviction because the error was harmless beyond a reasonable doubt.

## FACTS

Appellant was convicted of intentionally possessing heroin with the intent to distribute in violation of 21 U.S.C. § 812. During deliberations in Appellant's trial, the jury sent the judge two notes.

The first note asked whether having possession of the heroin, in the quantity in question, meant that Appellant had the intent to distribute the drug. The judge referred the

---

1. Appellant also contends that allowing expert testimony regarding the difference between an experienced and inexperienced drug smuggler, which countered part of his defense, was an abuse of discretion. We disagree. The evidence was clearly admissible under Federal Rule of Evidence 702.

jury to two appropriate instructions after consulting with counsel.

The second note, a long note containing a question from a lone juror, forms the basis for this appeal. Counsel were not consulted regarding a response and the court, for reasons not explained in the record, did not respond to the note. The text of the note follows:

> If it is believed that the defendant had no prior knowledge of the heroine [sic], but did knowingly put it in the chair—must we automaticly [sic] come to the conclusion that he knew it was a sizable amount, and that he would then distribute it? I was not convinced that the defendant was the one who prepared the shoes and asked Medina to wear them across the bourder [sic], and so cannot be sure (from the video, transcripts of; or the rest of testimony or evidence) that the defendant had intention to distribute or whether it was his intention to hide it. I am asked to use common sense to assume that because he hid the shoes and acted suspicious that he is guilty (by the other members of the jury).

It is unclear at what point the parties learned of the second note. Proceedings on July 19, 1996, after the jury had returned its verdict, began with counsel for Appellant asking if the "note from the jury we never did get to see" was "a matter of record at least?" The judge then entered the note in the record and stated that the question in the note "was not answered. At least not by the Court or any of the Court personnel. Maybe some of the jurors did [answer it]." Counsel for Appellant responded: "Apparently." He did not make any objections, nor did he then make a motion for a new trial.

## DISCUSSION

### A. Error Was Committed

 Jury messages should be "answered in open court and ... petitioner's counsel should [be] given an opportunity to be heard before the trial judge respond[s]." *See Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975) (citations omitted). Although Appellant may not have had a constitutional right to be

present while his lawyer discussed the note with the judge,[2] he did have the Sixth Amendment right to be represented by his attorney at such a conference. *See United States v. Frazin,* 780 F.2d 1461, 1469 (9th Cir.1986) (holding "constitutionally fatal" the absence of both defendants and counsel in formulating judge's response to jury, without deciding whether defendants personally must be present at conference). In this case, counsel for Appellant could have used such a conference to try and persuade the judge *to* respond. The trial judge's failure to provide that opportunity was error. Because the error implicates defendant's constitutional rights, we may disregard it only if we deem it harmless beyond a reasonable doubt. *See Frazin,* 780 F.2d at 1469–70 (9th Cir.1986)(citing *Chapman v. California,* 386 U.S. 18, 21–22, 87 S.Ct. 824, 826–27, 17 L.Ed.2d 705 (1967)).

### B. The Error Was Harmless Beyond a Reasonable Doubt

 While an error was committed, we are convinced "beyond a reasonable doubt that the error did not contribute to the verdict obtained." *Frazin,* 780 F.2d at 1469–70 (quoting *Chapman v. California,* 386 U.S. 18, 21–22, 87 S.Ct. 824, 826–27, 17 L.Ed.2d 705 (1967)). In *Frazin,* we identified three factors useful in ascertaining whether an error is harmless:

> First, we consider the probable effect of the message actually sent, second, the likelihood that the court would have sent a different message had it consulted with appellants beforehand and third, whether any changes in the message that appellants might have obtained would have affected the verdict in any way.

*Frazin,* 780 F.2d at 1470–71. *Id.*

Applying the factors outlined in *Frazin,* we are convinced the error was harmless for three primary reasons.

First, the judge sent no message to the jury. The judge did nothing to suggest that a verdict should be returned, nor did he do anything to influence the jury or the inquir-

---

**2.** Federal Rule of Criminal Procedure 43(c)(3) allows conferences to proceed in the absence of a

defendant when they involve discussions of questions of law.

ing juror in any way. In addition, the entire jury, when polled, embraced the verdict. The juror who sent the note expressed no dissatisfaction with the result.

Second, even if he had correctly consulted with counsel, the judge would likely have made the same decision: not to respond. The judge knew the jury had the relevant instructions. He had referred the jury to those instructions when he responded to its first note. The content of the note does not reveal any legal disorientation on the part of the juror or the jury, it simply reveals some difficulty in assessing the probative value of the evidence. It is not the role of a judge to help a juror sort out her own deliberative thinking.

Had Appellant timely made a motion for a new trial, the district judge would have had the opportunity to explain his decision to ignore the note. Given Appellant's failure timely to make a motion for a new trial, we are unwilling to assume an inadequate reason for the district judge's decision not to respond—especially in light of the context of the note and his earlier response to the jury. According to Federal Rule of Criminal Procedure 33, the time to make such a motion expired seven days after the verdict. Under these circumstances, we will presume the best of the district judge, not the worst.

Third, even had the judge been convinced by Appellant to respond, any guidance he was likely to have offered was unlikely to have changed the jury's verdict. At best, he would have referred them again to the instructions and told them that he could not weigh the evidence or decide the case for them. Thus, we find the error harmless beyond a reasonable doubt.

In dissent, Judge Ferguson claims the juror's question showed that the jury erected "an automatic conclusion or mandatory presumption of knowledge and intent from a finding of mere possession." We respectfully disagree. We see the question posed by the juror as a simple inquiry regarding the power of certain evidence to support a factual conclusion. Accordingly, this case is not controlled as Judge Ferguson suggests by *Sullivan v. Louisiana*, 508 U.S. 275, 280, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). *Sullivan* dealt with an erroneous jury in-

struction. Here no one—not a juror, not the judge, not one of the attorneys—ever mentioned the term "presumption." That legal concept never entered this case. The "presumption shoe" simply does not fit.

This case also differs markedly from *McDowell v. Calderon*, 130 F.3d 833 (9th Cir.1997). In that case, a jury deciding whether a convicted murderer should live or die manifested clear confusion regarding a critical point of law on which it had been instructed. *Id.* at 836–37. The jury in *McDowell* believed it could not—as a matter of law—consider mitigating evidence. *Id.* The juror in this case merely could not determine the probative force and value of a certain piece of evidence.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

I dissent for the reasons so eloquently expressed by Judge Trott in *McDowell v. Calderon*, 130 F.3d 833 (9th Cir.1997) (en banc). The majority correctly holds that the district court's summary treatment of the note violates the Sixth Amendment. However, the majority glosses over the question of whether a jury may come to automatic conclusions, a question which was ignored by the trial court. A belief by a jury in automatic conclusions relieves the government of its full burden of proof and vitiates the jury's verdict. By engaging nonetheless in the harmless error analysis, the majority permits the jury to become the "unguided missile" found unconstitutional in *McDowell*.

**FACTS**

In order to understand the note in the context of this case, it is necessary to set forth a summary of the drug transaction:

1. Francisco Medina–Perez was arrested in the United States for transporting heroin across the Mexican border. The drugs were in a pair of tennis shoes that he was wearing.

2. The government concedes that Medina–Perez lies. At the border stop, he stated that the drugs belonged to him. Later he stated that they belonged to a

man he met in Tijuana. Finally, he stated that the drugs belonged to the defendant.

3. Medina–Perez agreed to cooperate with the government by continuing on to Seattle to make a delivery of the drug. He checked into a hotel, telephoned his daughter, and told her to tell the defendant where he was.

4. The defendant arrived at the hotel room. A video camera recorded their actions. However, much of the audio was unintelligible.

5. At trial, Medina–Perez testified that the defendant said: "Raul, if they caught you, tell me" and then picked up objects around the room as though he suspected something. Medina–Perez then testified that the defendant said that he would pay Medina–Perez $2,000 after the defendant sold the drug.

6. The video tape showed the defendant place the tennis shoes in the underside of a chair. The defendant was arrested upon leaving the hotel room.

7. The defendant claims that he went to the hotel room to express his romantic interest in Medina–Perez's daughter. The daughter supported this testimony.

8. The defendant claims that Medina–Perez and his other daughter set the defendant up in order to keep the authorities from finding out that the Medina–Perez family was heavily involved in the drug trade.

## DISCUSSION

During deliberations, the jury sent two inquiries to the judge. The first read: "Does having possion [sic] of the herion [sic] (this quantity) mean he has the intent to distribute?" The judge properly consulted with the parties, informed the jury that the question concerned the proof of the intent to distribute heroin, and directed them to two specific jury instructions which contained the answer.

The next day, the jury sent out the note now at issue. It was signed by the foreperson and one juror. The first portion of the note read:

[I]f it is believed that the defendant had no prior knowledge of the heroine [sic], but did knowingly put it in the chair—must we automaticly [sic] come to the conclusion

that he knew it was a sizable [sic] amount, and that he would then distribute it? ...

The trial court never answered this note. The parties were not presented with the note until after the verdict was delivered.

The question, in effect, asks whether it is proper to erect an automatic conclusion or mandatory presumption of knowledge and intent from a finding of mere possession. The only correct answer to the question, of course, is no. Knowledge and intent may be proven by inferences and indirect evidence, but it has never been held that jurors may come to an automatic conclusion, *i.e.* without thought or volition, regarding an element of a crime. *See, e.g., Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

We assume that the jury will understand and follow the instructions it is given. However, where it becomes clear through juror correspondence that the jury is erecting an erroneous mandatory presumption, it is the district court's duty to correct the legal error. Indeed, this Court has recently confirmed that, "[a]s they work towards a verdict, the jurors must stay in the channel charted for them by ... law. To this end, they may need ongoing guidance." *McDowell,* 130 F.3d at 836. Even where the relevant instructions are "technically flawless," if it becomes clear that a jury has misinterpreted those instructions, the trial judge has "a duty to respond to the jury's request with sufficient specificity to clarify the jury's problem." *Id.* at 839 (quoting *Davis v. Greer,* 675 F.2d 141, 145 (7th Cir.1982)). "Moreover, when constitutional requirements are involved, the proper execution of this duty is a matter of insuring due process of law as guaranteed by the Fourteenth Amendment." *Id.*

The district court's failure to respond to the constitutional error in this case amounts to the sort of erroneous instruction reversed in *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In that case, the Supreme Court reconfirmed that "[a] mandatory presumption—for example, the presumption that a person intends the ordinary consequences of his voluntary

acts—violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense." *Id.* at 280, 113 S.Ct. at 2082 (citing *Sandstrom,* 442 U.S. 510, 99 S.Ct. 2450 (1979); *Francis,* 471 U.S. 307, 105 S.Ct. 1965 (1985)). Such an erroneous presumption "vitiates all the jury's findings." *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082.

The majority claims *Sullivan* does not control because the legal concept of "presumption" never entered this case. Justice Scalia stated in *Sullivan* that mandatory presumptions violate the due process clause because they relieve the government of its burden of proving all elements of the offense. Automatic conclusions suffer from the same defect and thus violate due process as well.

The cavalier attitude of the majority in this case is summed up by its assertion that "[t]he content of the note does not reveal any disorientation on the part of the juror or jury, it simply reveals some difficulty in assessing the probative value of the evidence. It is not the role of a judge to help a juror sort out her own deliberative thinking."

It was not the deliberative thinking of a single juror that was the import of the first part of the note, but a legal question signed by the foreperson and another juror on behalf of the entire jury: "must we automaticly [sic] come to the conclusion that he knew....?" The failure of the trial court to answer such a question amounts to a violation of due process of law. No amount of wishful thinking by the majority can cure the enormity of the prejudicial error. By not answering the question, the trial court in effect told the jury that there is nothing wrong with making automatic conclusions. The error is made more egregious by the fact that due process could easily have been safeguarded with a five minute hearing with counsel and a simple note to the jury saying "you may not automatically come to any conclusion."

The attitude of the majority concerning *McDowell* is also puzzling. There, among other serious statements about our constitutional system of justice, Judge Trott said that a jury "is not an unguided missile free according to its muse to do as it pleases." *McDowell,* 130 F.3d at 836. Here, the foreperson and one member of the jury asked the court if the jury must automatically come to a conclusion. It is apparent from the context of the note that the jury was in fact considering the possibility. For a trial court to completely ignore the note is to permit the jury to become that unguided missile that Judge Trott describes as constitutionally defective.

As Judge Trott states in *McDowell,* "there is no one-size-fits-all response to jury disorientation." *Id.* at 840. Yet here he describes "must we automatically conclude" as a mere weight of the evidence issue. The foreperson of the jury clearly spelled out the jury disorientation. "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Id.* at 839 (quoting *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)). This means that the trial court has "a duty to respond to the jury's request with sufficient specificity to clarify the jury's problem." *Id.* (quoting *Davis v. Greer,* 675 F.2d 141, 145 (7th Cir.1982)). The trial court's complete failure to respond was the worst thing that could have happened.

Finally, engaging in the harmless error analysis in such a situation requires this panel to engage in pure speculation regarding what a reasonable jury would have done had they followed the correct legal analysis. *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082–83. When that happens, it is the Court and not the jury who judges the defendant guilty, contrary to the guarantees of the Sixth Amendment. *Id.* at 277, 281, 113 S.Ct. at 2080, 2082–83; *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Having found the district court to be in error, the right to trial by jury precludes this Court from judging the uncorrected mandatory presumption harmless.

## CONCLUSION

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial, by an impartial jury...." U.S. Const. amend. VI. The most important aspect of this right is to have a jury, and not the judge, determine guilt or innocence. *Sullivan* 508 U.S. at 277,

113 S.Ct. at 2080; *Sparf v. United States,* 156 U.S. 51, 105–06, 15 S.Ct. 273, 294–95, 39 L.Ed. 343 (1895). By allowing the jury to apply a mandatory presumption, the district court violated the due process clause by relieving the government of its burden of proving each element of the crime charged. The jury verdict must therefore be vitiated. By engaging nonetheless in the harmless error analysis, the majority now compounds the district court's error by speculating about what a reasonable jury might hold were it applying the proper standard. I therefore respectfully dissent.