**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Carlos BERTOLO, Defendant—**
**Appellant.**

No. 01–10726.
D.C. No. CR–99–00308–KJD.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2002.

Decided Dec. 24, 2002.

---

**2.** We grant the VA's motion to supplement the record.

Before BERZON, TALLMAN, and CLIFTON, Circuit Judges.

MEMORANDUM *

Defendant Carlos Bertolo appeals his 2001 conviction by jury trial on twenty-seven counts related to the possession of listed chemicals (ultimately to be used in the manufacture of methamphetamine). Those charges included Conspiracy to Possess a Listed Chemical, Possession of a Listed Chemical, Possession of Manufacturing Paraphernalia, Structuring, and Money Laundering.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. As the parties are familiar with the facts, we recite them only as necessary.

On appeal, Bertolo raises seven main issues: (1) error in the trial court's response to jury inquiries; (2) insufficiency

of the evidence to support a conspiracy conviction; (3) discrepancies between the indictment and jury instructions; (4) vagueness of the possession statutes; (5) separate convictions for money laundering and structuring where it is argued that the charges of structuring should have been recognized as lesser included offenses of the money laundering charges; (6) inaccurate assignment of the Base Level of iodine (as a listed chemical) for sentencing purposes; and (7) impermissible seizure of certain of Bertolo's financial accounts, when those assets were specifically found by the jury not to be derived from the illicit activity.

We affirm the conviction and sentence as to all counts. With respect to Bertolo's challenge to the forfeiture of certain accounts, we remand to the district court to determine the proper procedure to allow the government to collect the debt owed to the United States by Bertolo.

## 1. Response to Jury Questions

▆▆▆ In general, a defendant has a right under Rule 43 of the Federal Rules of Criminal Procedure to be present at all phases of trial and a Sixth Amendment right to have his counsel present when the judge discusses jury inquiries.

Here, although it was not clear from the original record, both parties have stipulated that Bertolo's trial attorney was, in fact, notified and did participate in discussions prior to the court's response to the jury notes, albeit by telephone conference call and not in person. That was sufficient to satisfy Bertolo's right to counsel.

Bertolo's Rule 43 right to be present at all phases of trial provides for an exception "when the proceeding involves only a con-

ference or hearing upon a question of law." Fed.R.Crim.P. 43(c)(3).[1] Discussion of the jury inquiries falls within that exception.

In addition, it is highly unlikely that counsel's in-person participation or Bertolo's personal participation in the court conference concerning the jury inquiries would have resulted in any different response, making any error harmless. Harmless error in the context of a trial judge's response to jury inquiries, in that case without any notice to the parties, was addressed by this Court in *United States v. Barragan–Devis*, 133 F.3d 1287, 1289 (1998). There, we employed a three-factor test to evaluate harmlessness which was presented in *United States v. Frazin*, 780 F.2d 1461, 1470–71 (9th Cir.1986): "First, we consider the probable effect of the message actually sent, second, the likelihood that the court would have sent a different message had it consulted with appellants beforehand and third, whether any changes in the message that appellants might have obtained would have affected the verdict anyway." *Barragan–Devis*, 133 F.3d at 1289.

Because the judge's responses merely referred the jury to the instructions already given to them and because it is highly unlikely that the presence of the defendant or an in-person appearance by counsel would have resulted in a different response, we find that any error would have been harmless beyond a reasonable doubt. *Id.* at 1289.

## 2. Sufficiency of Evidence to Support Conspiracy Conviction

▆▆▆ "Sufficiency of the evidence is satisfied if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

---

1. Rule 43 was amended effective December 1, 2002. This reference is to the version of Rule 43 in effect at the time of Bertolo's trial. As amended, the pertinent provision now appears, with slightly different wording, within Rule 43(b)(3).

the essential elements of the crime beyond a reasonable doubt.' *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." *United States v. Tisor,* 96 F.3d 370, 379 (9th Cir.1996) (emphasis in original).

While Bertolo attempts to characterize the co-conspirators as merely compliant employees who lacked the requisite intent necessary to form an agreement to support a conviction of conspiracy, the record demonstrates ample evidence to infer an agreement. *See United States v. Melchor–Lopez,* 627 F.2d 886, 890 (9th Cir. 1980). The bogus invoicing of iodine and red phosphorous, removal of labels from listed chemicals, use of pet container boxes to obscure the contents of listed chemicals, instruction to tell callers that they did not sell red phosphorous, referrals of calls to the fraudulent "Chem Tech" for the pseudonymous "John Franco" to Bertolo, discussions between employee Daniel Pragosa and Bertolo regarding the use and legality of the listed substances, and Pragosa's testimony that he knew that customers were using methamphetamine all support an inference of an agreement because these acts required considerable coordination and planning. *See United States v. Iriarte–Ortega,* 113 F.3d 1022, 1024 (9th Cir. 1997) (*amended in other respects by* 127 F.3d 1200).

**3. Discrepancies in Indictment and Jury Instructions**

■ The discrepancy issue was not raised below, and we hold that there was no plain error resulting from the discrepancy between the elements of money laundering as stated in (a) the Indictment and Jury Instruction No. 15 (which used "and") and (b) Jury Instruction No. 20 ("or"). The relevant statute and Jury Instruction No. 20 both clearly provide for a finding of either concealment *or* structuring to support a money laundering conviction. Recently, we explicitly held that a jury may convict on any of the elements of a disjunctively defined offense, even if the indictment charges the offense using conjunctive language. *See United States v. Booth,* 309 F.3d 566, 571–72 (9th Cir.2002).

Although Bertolo contends that the possession and distribution of manufacturing paraphernalia under 21 U.S.C. § 843(a)(6) and (a)(7) do not constitute "unlawful activity" as defined by the money laundering statute, this argument lacks merit. 18 U.S.C. § 1956(c)(7)(D) specifically includes "a felony violation of the Chemical Diversion and Trafficking Act of 1988;"[2] and, § 843(d) of that act establishes penalties of up to 10 years imprisonment for a defendant's first violation of § 843(a)(6) or (7) and up to 10 years for subsequent violations, thus rendering it a felony.

**4. Void for Vagueness Concerns Regarding Possession Counts**

■ Bertolo's concern that unsuspecting retailers who lack the necessary *mens rea* to support conviction will be caught in a net cast too broadly by 21 U.S.C. § 841(c)(2)[3] (possession of a listed chemical) and 21 U.S.C. § 843(a)(6) (possession of manufacturing paraphernalia) does not provide a basis for reversing his own conviction. The statutes only punish those defendants who knowingly or intentionally possess or distribute the relevant substances, knowing or having reasonable

---

**2.** The "Chemical Diversion and Trafficking Act of 1988," referred to in subsec. (c)(7)(D), is Act Nov. 18, 1988, P.L. 100–690, Title VI, Subtitle A, 102 Stat. 4312, which generally appears as 21 U.S.C. §§ 801 et seq.

**3.** Formerly 21 U.S.C. § 841(d)(2).

cause to believe that they will be used to manufacture a controlled substance. The jury concluded that Bertolo had such knowledge. "The theoretical possibility that the village will enforce its ordinance against a paper clip placed next to Rolling Stone magazine ... is of no due process significance unless the possibility ripens into a prosecution." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 503 n. 21, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The scienter requirement in the statutes helps to alleviate any potential vagueness problem: "[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice ... that [the] conduct is proscribed." *Id.* at 499, 102 S.Ct. 1186.

5. Structuring Count as a Lesser Included Offense of Money Laundering

■ "To identify lesser-included offenses, federal courts follow the 'elements' test. *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Under that test, an offense is not 'lesser included' unless (1) the elements of the lesser offense are a subset of the elements of the charged offense, and (2) it is impossible to commit the greater offense without first having committed the lesser. *Id.* at 716, 719, 109 S.Ct. 1443 ..." *United States v. Pierre,* 254 F.3d 872, 875 (9th Cir.2001).

Bertolo argues that the structuring offense is merely a subset of the money laundering offense, but a comparison of the two statutes reveals several differences. First, § 1956 requires that the defendant knew that the property involved in the transaction represents the proceeds of some form of unlawful activity; § 5324 does not impose this requirement. Second, § 1956(a)(1)(B) liability may be established by structuring under subsection (i)

similar to that of § 5324(a)(3) *or* by concealment under subsection (ii)—which is not an element of § 5324. Third, the § 5324 structuring counts, as the jury was instructed, required a finding beyond a reasonable doubt that the transaction was part of a pattern of illegal activity involving more than $100,000 in a 12–month period. That was an "element" of the crime and not simply a sentencing enhancement.

6. Appropriate Base Level of Iodine for Sentencing Purposes

The district court properly analogized iodine to hydriodic acid. *See* U.S.S.G. § 2X5.1. There was sufficient evidence to support the district court's finding of the amount of iodine at issue. The district court properly applied the controlling 1998 sentencing guidelines, meaning that there was no retroactive application of a criminal law. *See United States v. Johns,* 5 F.3d 1267, 1270 (9th Cir.1993).

7. Seizure of Accounts

As it appears to acknowledge, in seeking to collect the amount ordered forfeited by Bertolo, the government failed to comply fully either with the Federal Debt Collection Procedure Act ("FDCPA"), 28 U.S.C. § 3001, or with 21 U.S.C. § 853(p). Since Bertolo's convictions are affirmed, the forfeiture order itself remains valid. Consequently, we remand to the district court for further proceedings in connection with collection of the criminal forfeiture judgment. The government may seek to obtain an amended order under 21 U.S.C. § 853(p) describing the accounts in question as "substitute property," or may proceed in compliance with the FDCPA, giving adequate notice to Bertolo and filing a proper return by the U.S. Marshal. If the government acts with reasonable promptness, the accounts in question and the

assets they contained need not be returned to Bertolo in the meantime.

8. Conclusion

For the reasons outlined above, the convictions and sentence are AFFIRMED. The government's collection of amounts owing under the order of forfeiture is REMANDED to the district court for further proceedings.

* This disposition is not appropriate for publication and may not be cited to or by the courts