**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Julie Ann WILSON, Defendant–**
**Appellant.**

**No. 05–50679.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 2006.

Filed Oct. 18, 2006.

FDSD–Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Before: HALL, McKEOWN, and WARDLAW, Circuit Judges.

MEMORANDUM *

Julie Ann Wilson appeals her conviction by jury of two counts of bringing an alien into the United States without immediate presentation or inspection, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii), and one count of bringing an illegal alien to the United States for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 (aiding and abetting). We affirm.

█ Wilson argues that her Sixth Amendment right to be present at all stages of her trial was violated when the district court failed to inform her of a jury note with two questions, one of which indicated deadlock, and that she was prejudiced by this violation. "Jury messages should be 'answered in open court and . . . petitioner's counsel should [be] given the opportunity to be heard before the trial judge respond[s].'" *United States v. Barragan–Devis,* 133 F.3d 1287, 1289 (9th Cir. 1998) (quoting *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)). Although the district court responded to the first question, it did not respond to the deadlock question (the only error appealed). Had he been informed of the note, Wilson's counsel might have "tr[ied] [to] persuade the judge *to* respond." *Id.* (emphasis in original). Therefore, the district court's failure to

USSD–Office of the U.S. Attorney, San Diego, CA, for Plaintiff–Appellee.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

inform Wilson or her attorney of the jury note was constitutional error.

■ However, a violation of a defendant's Sixth Amendment right to be present at all stages of trial is subject to the harmless error rule of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *United States v. Frazin*, 780 F.2d 1461, 1469 (9th Cir.1986). Constitutional error is harmless when we are "convinced 'beyond a reasonable doubt that the error did not contribute to the verdict obtained.'" *Barragan–Devis*, 133 F.3d at 1289 (citing *Frazin*, 780 F.2d at 1469–70). We consider three factors for determining harmlessness in the jury note context: (1) the probable effect of any message actually sent to the jury, (2) the likelihood the court would have sent a different message had it consulted with the appellant beforehand, and (3) whether any changes in the message appellant might have obtained would have affected the jury verdict. *Frazin*, 780 F.2d at 1470.

Here, the district court did not respond at all to the deadlock question, and thus "did nothing to suggest that a verdict should be returned, nor did [it] do anything to influence the jury ... in any way." *Barragan–Devis*, 133 F.3d at 1289–90. The probable effect on the jury of the district court's failure to respond was thus negligible. Wilson argues that she was deprived of the opportunity to request an *Allen* charge. *See generally Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). However, this argument overlooks that the jurors had already been given a "conscientious belief" instruction. It is improbable that a repeat of the district court's earlier instruction would have changed the outcome for Wilson,

even assuming the district court would have accommodated her request. Because no prejudice is demonstrated under the *Frazin* factors, the district court's failure to notify Wilson of the jury note was harmless error.[1]

■ Wilson next argues that, because she was the principal who brought aliens into the United States within the meaning of 8 U.S.C. § 1324(a)(2)(B)(ii), it was legally impermissible for the government to simultaneously charge her under an aiding and abetting theory. *See* 18 U.S.C. § 2. However, the evidence produced at trial was sufficient for a jury to find that Felipe, Wilson's boyfriend, was the principal to the offense, and that her actions were merely in support of his human-smuggling operation. Moreover, we have plainly held that "[a]iding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense." *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir.2005). The government was not required to choose between principal and aider-and-abettor theories of liability; it properly charged her with both.

■ Wilson also attacks her conviction on Count Three of the indictment, contending that insufficient evidence was presented to support the "financial gain" element of 8 U.S.C. § 1324(a)(2)(B)(ii). Conviction as a principal under that provision requires that the government prove the defendant specifically intended to "derive a financial benefit from transport of the aliens." *United States v. Munoz*, 412 F.3d 1043, 1046 (9th Cir.2005). On the other hand, conviction as an aider and abettor merely requires an "intent to aid

---

1. Wilson additionally claims she would have sought a mistrial had she properly been informed of the note. However, the jury note here did not indicate a certainty of a dead-lock, but only a "probability" of one. Therefore, a mistrial "would have been premature" at that point. *United States v. Green*, 962 F.2d 938, 944 (9th Cir.1992).

and abet another as a principal in achieving financial gain." *Id.* at 1046–47 (citing *United States v. Tsai*, 282 F.3d 690, 697 (9th Cir.2002)).

Under either standard, the evidence presented at trial was sufficient for a rational trier of fact to conclude that Wilson had the requisite mens rea relating to financial gain. Calderon–Velasquez, one of the aliens apprehended in the van Wilson was driving, testified that she expected to pay up to $4,000 to be smuggled into the country. Moreover, Wilson admitted that she had been paid to smuggle aliens across the border on prior occasions. Presented with similar factual circumstances, we held in *United States v. Schemenauer*, 394 F.3d 746, 751 (9th Cir.2005), that the jury was entitled to infer that the defendant specifically intended to gain financially from the smuggling activity.[2]

A rational juror could also have found, based on the evidence presented, that Wilson brought Calderon–Velasquez to the United States for the financial gain of some other principal under the *Tsai* test for aiding and abetting liability. 282 F.3d at 697. Wilson testified that she believed Felipe was a professional alien smuggler and that he provided her with food, lodging, and clothing. It was thus reasonable to infer that she drove the van with the intent to confer a financial benefit upon him.[3]

■ Wilson argues further that the prosecutor improperly commented to the jury about the existence of an "alien smuggling organization" during closing argument. Because the prosecutor's comments were based on reasonable inferences from the evidence produced at trial, *see Menendez v. Terhune*, 422 F.3d 1012, 1037 (9th Cir.2005), and particularly from Wilson's own testimony, the district court did not abuse its discretion in overruling Wilson's objections.

Lastly, Wilson argues that her Fifth Amendment rights were violated by the impermissible instructions given to grand jurors in the Southern District of California. Accordingly, she contends that the district court erred in not dismissing the indictment against her. As Wilson concedes, however, this argument is foreclosed by our decision in *United States v. Navarro–Vargas*, 408 F.3d 1184 (9th Cir. 2005) (en banc). Therefore, the district court did not err in refusing to dismiss the indictment.

**AFFIRMED.**

---

2. Wilson's proffered explanation—that she was merely driving as a favor to Felipe—cannot on its own defeat the sufficiency of the government's evidence. The jury was entitled to disbelieve Wilson's testimony and conclude that she drove the van because she was paid to do so. *See United States v. Cisneros*, 448 F.2d 298, 305 (9th Cir.1971) ("A trier of fact is not compelled to accept and believe the self serving stories of vitally interested defendants.").

3. Because the evidence presented at trial was sufficient to find that Wilson possessed the requisite intent under either theory of liability, we decline to reverse Wilson's conviction on that basis. The better practice, however, when the government presents alternative theories of liability, would be to use a special verdict form, which would provide us a meaningful opportunity to review such cases.