NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-10018 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00273-JAM-2 |
| v. | |
| CLEMENTE FERRIAS ARROYO, | MEMORANDUM[*] |
| Defendant - Appellant. | |
| UNITED STATES OF AMERICA, | No. 11-10022 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-00273-JAM-1 |
| v. | |
| JOSE ALFREDO ZEPEDA, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Submitted December 3, 2012[]
San Francisco, California

Before: HAWKINS, TASHIMA, and MURGUIA, Circuit Judges.

Defendants Clemente Ferrias Arroyo and Jose Alfredo Zepeda were convicted of various crimes stemming from their participation in a large marijuana growing operation in rural Lassen County, California.[1] They appeal, contending that the district court investigated an accusation of jury misconduct inadequately. We disagree. Arroyo and Zepeda also argue that the district court's ex parte response denying the jury's request for a transcript of Arroyo's testimony was structural error requiring automatic reversal of both convictions under *United States v. Cronic*, 466 U.S. 648 (1984). We agree that the court erred. The error was not structural as to Zepeda's conviction, and his conviction is affirmed. Because we cannot say that this error was "harmless beyond a reasonable doubt" as to Arroyo, *Chapman v. California*, 386 U.S. 18, 24 (1967), we reverse his conviction and remand. We therefore need not decide whether the error was structural as to Arroyo. *Id.*

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[1] Defendants were convicted of: conspiracy to manufacture marijuana plants in violation of 21 U.S.C. §§ 846 and 841(a)(1); manufacture of marijuana plants in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

We begin by addressing Arroyo's and Zepeda's challenge to the adequacy of the district court's investigation into potential juror misconduct, specifically one juror's alleged intimidation of other jurors.

Near the beginning of deliberations, the jury foreperson informed the district court that another juror was being overtly hostile to her fellow jurors. With all parties present, the district judge informed the accused juror individually that her conduct during deliberations intimidated other jurors. The district judge later called the entire jury to the courtroom, and instructed them on, among other things, the importance of civility. No juror made any further complaint, and when asked, before the judge announced their verdict, whether any juror felt coerced into going along with the verdict, no juror raised his or her hand. After the judge read the verdict, he offered the parties the opportunity to have the jury polled. Both sides declined.

Ordinarily, we review the district court's investigation of jury misconduct for abuse of discretion. *United States v. Shryock*, 342 F.3d 948, 973 (9th Cir. 2003) (citing *United States v. Beard*, 161 F.3d 1190, 1194 (9th Cir. 1998)). The government urges us to review the court's investigation for plain error, as neither Arroyo nor Zepeda objected to the proceedings while the district court conducted them. We need not determine whether plain error or abuse of discretion review applies to the district

3

court's handling of the investigation, because the district court did not err under either standard.

Arroyo and Zepeda suggest the district judge could have better addressed the foreperson's complaint, but a district court conducting a hearing to investigate juror misconduct has "discretion to determine the extent and nature of the hearing" into that misconduct. *Price v. Kramer*, 200 F.3d 1237, 1254 (9th Cir. 2000) (quoting *Hard v. Burlington N. R.R.*, 812 F.2d 482, 485 (9th Cir. 1987)). That the district court *could* have conducted its investigation differently does not mean the district court abused its discretion, much less that it plainly erred, by resolving the complaint as it did. We reject Arroyo's and Zepeda's argument that the district court's investigation was inadequate, and turn to the issue of the judge's ex parte communication with the jury.

Later in its deliberations, the jury sent a note requesting the "transcript from Arroya [sic] testimony." The same day, the judge responded in writing to the jury's request:

> As I previously instructed you, "At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript of the trial. I urge you to pay close attention to the testimony as given." Accordingly, your request for the "transcript from Arroyo testimony" must be denied.

4

The judge did not inform either party of the jury's request or of his response, and both were entered on the district court's docket only after the verdict.[2] Arroyo and Zepeda contend that this communication with the jury was structural error requiring automatic reversal. *See Cronic*, 466 U.S. at 659. We reject Zepeda's argument that the error was structural as to his conviction.[3] *See Bell v. Cone*, 535 U.S. 685, 695–96 (2002). Zepeda concedes that if the error is not structural, then it was harmless as to him. As to Arroyo, we conclude that the court's ex parte communication with the jury was not "harmless beyond a reasonable doubt," *Chapman*, 386 U.S. at 22, and therefore we need not reach the question whether the error was structural to remand his case for a new trial. *See Mach v. Stewart*, 137 F.3d 630, 634 (9th Cir. 1998) (declining to decide whether error was structural "because this error requires reversal under the harmless-error standard as well . . . .").

We have recognized that "defendants or their attorneys have a due process right to be present in conferences when jurors' notes are discussed . . . ." *Frantz v. Hazey*,

---

[2] That same afternoon, the judge received and responded to two other notes from the jury regarding the elements of the charged crimes with the guidance of counsel.

[3] The error was not structural as to Zepeda. The request for Arroyo's testimony does not implicate the basis for Zepeda's conviction. Thus, from Zepeda's perspective, the potential response to the note did not hold "significant consequences," *Bell*, 535 U.S. at 695–96, and was not a critical stage requiring automatic reversal of Zepeda's conviction. And, needless to say, the error was harmless as to Zepeda.

533 F.3d 724, 743 (9th Cir. 2008) (citing *United States v. Barragan-Devis*, 133 F.3d 1287, 1289 (9th Cir. 1998)). By responding to the jury's request for a transcript of Arroyo's testimony without first consulting Arroyo or his counsel, the district court committed a constitutional error, which we may ordinarily disregard only if the error is "harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 21–22; *see Barragan-Devis*, 133 F.3d at 1289.

Arroyo's defense rested on the argument that he was coerced into participating in the marijuana farming operation that led to his arrest. Arroyo was 63 years old at the time of trial. He testified that two men he did not know picked him up while he was working as a day laborer and took him to a remote site. Arroyo also testified that the men threatened not to take him back if he refused to work, and that he believed they might harm him. Once at the site of the garden, Arroyo testified that he did not feel free to leave (although he was not directly threatened). While Arroyo testified that he had been given a gun, he claimed not to know how to use it. Even if he could have escaped under these circumstances, Arroyo also testified that he was unfamiliar with the area where the garden was located and feared encountering animals if he tried to leave the site, which was more than a four-hour drive away from where he had been picked up and eleven miles from the closest town.

For us to find that the error in this case was harmless, it is the government's burden to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24; *United States v. Frazin*, 780 F.2d 1461, 1469–70 (9th Cir. 1986). Three factors are typically cited in evaluating "harmlessness" in the context of courts' responses to jury notes: (1) "the probable effect of the message actually sent"; (2) "the likelihood that the court would have sent a different message had it consulted with appellants beforehand"; and (3) "whether any changes in the message that appellants might have obtained would have affected the verdict in any way." *Frazin*, 780 F.2d at 1470–71. Arroyo argues that had his counsel been present, the court may have responded differently to the jury's transcript request. He offers one possible result that may have followed had he been allowed to participate in the formulation of the response: he would have argued for, and the judge could have provided, a read-back of the testimony—something both parties agree was within the court's discretion. Had counsel been successful in convincing the judge to allow for a read-back, or for distribution of a copy of the transcript, it could have affected the jury's verdict with respect to Arroyo because the viability of Arroyo's coercion defense rests almost entirely on the jury's assessment of the credibility of his testimony.

A rational jury exposed to all or part of Arroyo's testimony could have found that he was coerced to participate in the crimes of which he was convicted. In requesting a copy of Arroyo's transcript, the jury was likely engaged in weighing and testing the viability of Arroyo's testimony. At the end of the day, we cannot conclude that the government has met its burden to show that the error here was harmless. *See id.* at 1469–70 (quoting *Chapman*, 386 U.S. at 24) (holding that it is the government's burden to prove "beyond a reasonable doubt" that the court's error "did not contribute to the verdict obtained"). Accordingly, we reverse Arroyo's conviction and remand for proceedings consistent with this disposition. *Frazin*, 780 F.2d at 1469–70. We affirm Zepeda's conviction.

**No. 11-10018: Reversed and Remanded.**

**No. 11-10022: Affirmed.**